Arthur F. SMITH, Jr., et al.,
Plaintiffs-Appellants,

v.

Max ROSS et al., Defendants-
Appellees.

No. 73–1237.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1973.

Decided July 18, 1973.

**34**

Harland M. Britz, Toledo, Ohio, for plaintiffs-appellants; Britz & Zemmelman, Toledo, Ohio, on brief.

Ellis F. Robinson, Toledo, Ohio, for defendants-appellees; Thomas L. Dalrymple, Robert J. Scheer, Toledo, Ohio, on brief for appellee Ross; Fuller, Henry, Hodge & Snyder, Toledo, Ohio, of counsel for appellee Ross; Shumaker, Loop & Kendrick, John W. Hackett, Jr., Jon C. MacKay, Toledo, Ohio, on brief for appellee Ronald Schreiderer; Ritter, Boesel, Robinson & Marsh, Toledo, Ohio, on brief for appellee Celina Mutual Ins. Co.

Before PECK and McCREE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

PER CURIAM.

Appellants brought this action for damages under 42 U.S.C. §§ 1983, 1985(3) (1970) against the Sheriff of Marion County, Ohio, his deputy, his bonding company, and the mayor and city council of Prospect, Ohio. The amended complaint asserted that appellants were two members of an interracial four-piece musical band that had rented a building in Prospect on August 27, 1970, from one Jack Schmittauer to use for rehearsal purposes. It charged that on September 2, 1970, deputy Schreiderer told appellants' landlord that he would have to evict them because black residents were not welcome in Prospect and that the townspeople would burn down the building if Schmittauer permitted them to remain. It also charged that Schmittauer eventually was caused to evict appellants when Schreiderer threatened to withdraw police protection. These acts, the complaint alleged, were done under color of state law and were part of a conspiracy on the part of the deputy (for whose acts his superior, the Sheriff, was responsible) and the mayor and city council of Prospect to evict appellants, who are black, solely because of their race. The complaint further asserted that plaintiffs were required by their landlord to vacate because of defendants' acts, and that they did vacate, and that they were threatened and maligned by the deputy during the course of these events. The complaint also contained a claim that about ten months after these incidents occurred, deputy Schreiderer was involved in another incident with plaintiff Smith at a college campus, and that the deputy caused plaintiff's car to be stopped and searched for the purpose of discrediting him with respect to this lawsuit. Compensatory and punitive damages were sought.

The action proceeded to trial without a jury, and at the conclusion of appellants' case, the court granted the motions of defendants mayor and city councilmen to dismiss the complaint with respect to them, and granted the motion of the remaining defendants to dismiss the claim founded on the campus incident. No appeal has been taken from these dismissals.

At trial, appellants' witnesses testified that deputy Schreiderer, upon notification of a disturbance in Prospect, and after plaintiffs had reported that someone had thrown rocks at their building, went to the rented premises with other deputies and attempted to force appellants to leave by threatening them with imprisonment if they did not, by telling them that they had been evicted by their landlord when in fact they had not, and by indicating that they would not be protected by the police in the event the townspeople attempted to do violence to them. Further, appellants' evidence tended to show that the deputy on two occasions told the landlord to evict appellants, that he threatened the landlord by referring to rumors that the townspeople would burn the building and by

stating that the building would be condemned, and that he gave the landlord erroneous information that appellants had criminal records for narcotics violations, when in fact appellants had no such records. Appellants also attempted to establish that they eventually vacated the premises, two weeks after these incidents occurred, because they were afraid for their personal safety and for the safety of their landlord's property because of the threats of deputy Schreiderer. Appellants' attempts to prove the reason for their abandonment of the premises were hampered when the district court inexplicably prevented plaintiff Smith from testifying with respect to the reason he vacated the premises. Appellants and the landlord did agree that throughout these occurrences, contrary to the allegation in the complaint that the landlord was eventually forced to evict the band, the landlord was neutral and did not care whether appellants remained or vacated, as long as they did nothing illegal or did not otherwise create a disturbance.

The testimony of the deputy and of defendants' witnesses showed that the deputy had received reports of citizen complaints in Prospect that appellants were wiping their feet on an American flag (a charge that the district court found to be untrue) and were playing loud music, and that he had heard rumors that the townspeople were prepared to don white sheets and burn down the building. In contradiction of appellants' testimony, the deputy claimed that the landlord indicated he would evict them if they did not move out, and the deputy expressly denied having told appellant Smith that he would be jailed if he entered the building. He denied having said anything to appellants about their having been evicted, denied having told the landlord to evict appellants or that he would, and testified that the only criminal records involving appellants he furnished the landlord were given to him in response to his official inquiry. He also testified that he told appellants that they would

receive the same police protection enjoyed by the other townspeople but indicated that his ability to protect them was limited. The town marshal corroborated Schreiderer's testimony in many respects, and also testified that the deputy told appellants that he would prefer that they vacate because he was not sure he could protect them from the townspeople. The marshal stated that the deputy told appellants that he would do what he could to protect them, and that a patrol car remained in the vicinity during the night. The deputy did, according to the marshal, tell the landlord that it might be better if appellants stayed out of the building until everyone cooled down, but he agreed that appellants had every right to remain in the building if they wanted to.

The district court found that deputy Schreiderer "did try to persuade Schmittauer to persuade the plaintiffs to leave and did himself try to persuade, by less than diplomatic tact, the plaintiffs to leave." The court further determined:

> The motivating force in denying plaintiffs the free use of their property was not the Sheriff or his deputies, but the resentful townspeople of Prospect, none of whom are named as a party to this suit.

> The plaintiffs thereafter voluntarily vacated the premises.

> Therefore, the Court concludes that as a peace officer, Deputy Schreiderer was under a mandatory duty to maintain peace in Prospect. (Ohio Revised Code, § 509.10, "* * * and *shall* generally keep the peace in his county").

> It is axiomatic that, to prevent a disturbance, it is best to remove the source. That Deputy Schreiderer used tactless persuasion is merely a threat that was not carried out. Threatened deprivation of civil rights is not protected under 42 U.S.C., §§ 1983, 1985(3). The threats did not induce fear in the plaintiffs, who remained in occupancy of the premises for a

significant time after the complaints were made.

There was no conspiracy to deprive plaintiffs of their civil rights based solely on reasons of race.

No rights were in fact denied. The inconvenience of discussion and meetings to settle a potential disturbance was merely that—an inconvenience.

There was no intent to discriminate on the part of the remaining defendants and there was no injury.

The Court concludes that Deputy Schreiderer acted in good faith and with probable cause to alleviate a potential danger created by plaintiffs. (Pierson v. Ray, 386 U.S. 547, 87 S. Ct. 1213, 18 L.Ed.2d 288).

The court accordingly dismissed the complaint.

On appeal, plaintiffs claim to accept the factual findings of the district court, as indeed they must since the findings are supported by evidence in the record and are not clearly erroneous, Fed.R.Civ.P. 52(a). But plaintiffs then proceed to contradict their assertion by arguing that the evidence demonstrated, and the district court found, that "Deputy Schreiderer, reacting to pressure from the townspeople, forced plaintiffs to vacate property they otherwise would have enjoyed." This, of course, ignores the court's finding that appellants vacated voluntarily and that the deputy, although he attempted to persuade them to leave, did not force them to. Appellants again draw their own factual conclusions from the record by contending "that appellants left because they were afraid that if they didn't leave they would be framed or hurt, that their landlord's building might be damaged and the landlord himself might be framed. This all resulted from appellees' reaction to the narrow mindedness and bigotry of the townspeople of Prospect." To the extent that this is an argument that appellees' actions forced appellants to vacate, it is foreclosed by the finding of the district court that the actions of the defendants did not cause

plaintiffs to be apprehensive and did not contribute to their decision to vacate, although it is not inconsistent with a finding (that the court did not make) that plaintiffs vacated because they concluded that the sheriff would not be able to afford them complete protection from the actions of the townspeople.

Accepting, then, the facts as found by the district court, we hold that the court did not err in dismissing the complaint. No violation of 42 U.S.C. § 1985(3) was shown. Not only have plaintiffs failed to establish a conspiracy on the part of the deputy and the town officials to deprive appellants of any right, but they have also failed to show that anyone other than unidentified townspeople were motivated by racial animus. See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L. Ed.2d 338 (1971). Although the district court's finding in this regard is ambiguous—the court's conclusion that there was no conspiracy to deprive plaintiffs of any rights *solely* for reasons of race is open to the interpretation that racial motivation played at least some part in defendants' actions—reference to the record discloses no proof of any intent of any defendant (in contradistinction to the townspeople) to force the band members to vacate because of the band's interracial composition. And, the district court did find that the deputy acted in good faith, a finding completely inconsistent with any ascription of improper racial motivation to Schreiderer, upon whose liability depends the liability of the other defendants remaining in the case at the close of trial.

The question is closer with respect to the claim based on 42 U.S.C. § 1983, which, of course, requires no proof of conspiracy and no proof of racial animus. See, e. g., Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963). We agree with appellants that a law enforcement officer can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly, and thereby denies equal protection to persons legiti-

mately exercising rights guaranteed them under state or federal law. Acts of omission are actionable in this context to the same extent as are acts of commission. *See, e. g.,* Byrd v. Brishke, 466 F.2d 6, 9–10 (7th Cir. 1972); Whirl v. Kern, 407 F.2d 781 (5th Cir. 1968), cert. denied, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). Particularly in view of the circumstances surrounding the passage of § 1983, including the concern for protecting Negroes from the widespread non-enforcement of state laws, *see* Monroe v. Pape, 365 U.S. 167, 174–180, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the remedies provided in § 1983 are most appropriately extended to persons who, because of the unpopularity of their life-styles or the pervasiveness of racist animus in the community, are not protected in their attempt to enjoy peacefully and on an equal basis the civil rights guaranteed them under law. *See* Catlette v. United States, 132 F.2d 902, 906–907 (4th Cir. 1943); Huey v. Barloga, 277 F.Supp. 864 (N.D.Ill.1967). In addition, as the Supreme Court has often emphasized in related contexts, state officials are not entitled to rely on community hostility as an excuse not to protect, by inaction or affirmative conduct, the exercise of fundamental rights. *See, e. g.,* Cox v. Louisiana, 379 U.S. 536, 551, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Watson v. City of Memphis, 373 U.S. 526, 535, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963); Edwards v. South Carolina, 372 U.S. 229, 237, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Cooper v. Aaron, 358 U.S. 1, 16, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); *cf.* Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949).

Appellants contend that they are entitled to recover under these principles because the evidence established that the deputy refused to protect appellants from the hostile townspeople and attempted to coerce them into vacating the premises that they were peacefully enjoying. They point to the court's findings that the deputy did try to influence the landlord to persuade appellants to leave, and that he personally tried to persuade appellants to leave, in obedience to the principle that "to prevent a disturbance, it is best to remove the source." The problem with this argument, however, is that the district court found that the deputy did no more than make a good-faith attempt to persuade appellants to leave, an attempt which the court found to have been fruitless because it did not in fact cause appellants to vacate. The district court did not find that any inaction on the part of the law enforcement officers was causally related to the harm suffered by appellants, *see* Huey v. Barloga, *supra,* and it found that the affirmative conduct of the deputy—*i. e.,* his "tactless persuasion"—induced no fear in appellants. Although the court's finding that Schreiderer acted in good faith is not sufficiently specific to warrant the conclusion that Schreiderer merely advised appellants of his anticipated inability to protect them from violence on the part of the townspeople, *cf.* Striker v. Pancher, 317 F.2d 780 (6th Cir. 1963), the findings do compel the conclusion that Schreiderer's cluf efforts played no part in appellants' ultimate decision to abandon the town of Prospect in favor of more hospitable climes.

We do not condone the actions of the deputy, who would have served his office more honorably by unequivocally protecting appellants regardless of the local unpopularity his actions might have evoked. Nevertheless, we affirm because the facts as found by the district court support its judgment.

The judgment is affirmed.