Curtis HOLMES, Plaintiff,

v.

Garland J. WAMPLER, M.D., et al., Defendants.

Civ. A. No. 82–0594–A.

United States District Court, E. D. Virginia, Alexandria Division.

Sept. 7, 1982.

**502**

Mary E. Pierce, Fairfax, Va., for plaintiff.

Stuart H. Dunn, Martin A. Donlan, Jr., Crews, Hancock & Dunn, Mary Yancey Spencer, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM

RICHARD L. WILLIAMS, District Judge.

■ This case arises out of a knife injury inflicted on plaintiff by the defendant Compton five weeks after Compton's release from the Shenandoah Geriatric Treatment Center of the Western State Hospital ("Shenandoah"). Plaintiff alleges that the defendant Superintendent of Shenandoah, and the defendant Wampler, a physician at Shenandoah ("the State defendants"), negligently released Compton despite their knowledge or reason to know that Compton was a dangerous person, and despite their duty to act so as not to cause injuries to the citizenry; that defendants failed, either maliciously and wilfully or out of gross negligence, to warn plaintiff and other persons of Compton's dangerousness; and that the release and failure to warn proximately caused plaintiff's injury. Plaintiff asserts a cause of action under 42 U.S.C. § 1983,[1,2] and also brings unspecified pendent state claims before the court.

■ "The first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States." *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Clearly not all wrongs for which state officials may be liable under applicable state tort law are also wrongs cognizable under 42 U.S.C. § 1983. While section 1983 claims may constitute "a species of tort liability," *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976), the Court also has cautioned that section 1983 is not to be made into "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Section 1983 does not automatically convert potential tort liability under state law into tort liability under federal law whenever the alleged tortfeasor is a state official. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Baker, supra*, 443 U.S. at 146, 99 S.Ct. at 2695 ("false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official"); *Davis, supra* (defamation does not become constitutional violation merely because defamers are municipal officials); *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) ("not every injury in which a state official has played some part is actionable under [section 1983]"); *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980) (not every violation of state tort and criminal assault laws is a violation of substantive due process). Apparently plaintiff brings a state action sounding in negligence, and also claims a deprivation of liberty without due process of law, specifically, a violation

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. The remaining defendant is the Commonwealth of Virginia. The Eleventh Amendment bars suits directly against the states. *See Moreno v. University of Maryland*, 645 F.2d 217 (4th Cir. 1981). Hence the court dismisses the Commonwealth of Virginia from the case via the accompanying order.

of the constitutionally protected right to bodily security. *See Hall* at 613. Specific constitutional guarantees such as the Fourth and Eighth Amendment guarantees are not implicated in this case. The court, then, will analyze the allegations in terms of their sufficiency under procedural due process and substantive due process standards.

## PROCEDURAL DUE PROCESS

[4] Under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a meaningful postdeprivation remedy provided by a state for a deprivation of property satisfies procedural due process if meaningful predeprivation procedures relating to the deprivation are impracticable. *Id.* at 541, 101 S.Ct. at 1916. Predeprivation procedures usually are impracticable when the deprivation is an isolated event the occurrence of which is difficult to predict. *Id.* at 541, 101 S.Ct. at 1916. The particular circumstances of *Parratt* were deprivation of property within prison confines. The court does not accept the view, however, that the rationale of *Parratt* is limited to deprivations occurring within prisons. The distinction the Court makes in *Parratt* is that between isolated deprivations and deprivations which occur as a result of policy or custom, and which state officials reasonably could anticipate. *See Parratt* at 541, 101 S.Ct. at 1916. To hold that *Parratt* is limited to violations of constitutional rights of prisoners would suggest that prisoners are entitled only to watered-down due process protections that would not satisfy due process requirements where ordinary citizens are concerned. It is true that prisoners are largely within the control of officials while incarcerated; but if anything, that fact means that officials are in a better position to anticipate due process violations before they occur, so that deprivations occurring in a prison context are generally less likely to be isolated and unpredictable than those occurring in society at large.

 *Parratt* concerned allegations of deprivation of property without due process. The court sees no reason, however, why the *Parratt* rationale should not apply to nonproperty deprivations. *But see Parratt* at 545–6, 101 S.Ct. at 1918 (Blackmun, J., concurring); *Howse v. DeBerry Correctional Institute*, 537 F.Supp. 1177 (M.D. Tenn.1982). In *Parratt* the Court stated that its analysis was consonant with the reasoning in *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), which did not involve an alleged property deprivation, but the claim that corporal punishment in schools violated due process. *See Parratt* 451 U.S. at 542–3, 101 S.Ct. at 1916. Also, the distinction made between random deprivations difficult to predict and deprivations for which meaningful predeprivation process is practicable has nothing to do with whether the deprivation is a property deprivation or a liberty deprivation. To the extent that deprivations of liberty are more repugnant and less readily compensable than deprivations of property, they more likely satisfy the requirements for a substantive due process claim. Thus, the fact that the *Parratt* rationale applies to a deprivation of liberty without due process does not necessarily mean that a plaintiff cannot pursue his claim under section 1983: if the liberty deprivation is sufficiently egregious, it falls within substantive due process protection.[3]

**3.** In *Parratt*, the Court distinguished between those claims involving specific substantive constitutional guarantees, and those involving only "the Due Process Clause of the Fourteenth Amendment *simpliciter*." 451 U.S. at 536, 101 S.Ct. at 1913. The former category of claims was treated in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (Fourth Amendment claims), and *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (Eighth Amendment claims). In *Monroe*, the Court stated that "the federal remedy is supplementary to the state remedy," because an aim of the federal statute "was to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice." *Monroe* 365 U.S. at 183, 174, 81 S.Ct. at 481, 477.

Apparently the Court in *Parratt* found that the forum state's remedy was adequate in theory and in practice. However, according to *Monroe*, a forum state's remedy for a violation of, for instance, the Eighth Amendment, even if adequate both in theory and in practice, would not deprive a plaintiff of a federal claim, since

 Plaintiff has an adequate postdeprivation remedy under Virginia law. *See Semler v. Psychiatric Institute of Washington, D. C.*, 538 F.2d 121 (4th Cir. 1976). *Semler* also establishes that in some instances a state official in Virginia does not enjoy immunity for wrongs committed by a person in custody for psychiatric care, and whose release a state official could have prevented. Of course, such an official may be immune in respect to some of his conduct. In Virginia, a state official does not enjoy immunity for an intentional tort. *Elder v. Holland*, 208 Va. 15, 155 S.E.2d 369 (1967). Also, a state employee who acts wantonly or in a grossly negligent manner does not enjoy immunity. *James v. Jane*, 221 Va. 43, 267 S.E.2d 108, 113 (1980). In the area of simple negligence, Virginia law is less certain; the courts of Virginia take three factors into account in determining eligibility for immunity in such a situation: (1) whether the activity involved constitutes a governmental intrusion into formerly private areas; (2) whether the act performed involves the use of judgment and discretion; and (3) what degree of control and direction was exercised by the state over the employee alleged to have performed negligently. *Id.* 267 S.E.2d at 113. *See also Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973); *Crabbe v. School Board and Albrite*, 209 Va. 356, 164 S.E.2d 639 (1968).

 If this is a case in which Virginia extends immunity for simple negligence to the State defendants, that fact would not entail that Virginia had accorded plaintiff insufficient procedural due process protections. In section 1983 actions, officials such as those here are entitled to a qualified immunity which protects them from liability for wrongs due to simple negligence. *Cf. Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (prison officials); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Hughes v. Blankenship*, 672 F.2d 403 (4th Cir. 1982) (police officers). While the federal immunity protects officials from liability for all wrongs due to simple negligence, the Virginia immunity only protects its officials from liability for wrongs due to *some* acts of simple negligence. Thus, the Virginia immunity is weaker than the federal immunity. Since the federal immunity does not violate due process, neither does the state immunity. *See Irshad v. Spann*, 543 F.Supp. 922 (E.D.Va., 1982). The court finds that plaintiff has no procedural due process claim under section 1983.

## SUBSTANTIVE DUE PROCESS

Recent Supreme Court cases have not analyzed section 1983 claims in terms of substantive due process. *See Ingraham* 430 U.S. at 689 n.5, 97 S.Ct. at 1421 n.5 (1977) (dissenting opinion); *Parratt* 451 U.S. at

the federal remedy is supplementary to the state remedy where the claim concerns a right secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment.

However, substantive due process was conspicuous by its absence in *Parratt*. This silence on substantive due process claims raises the question whether such claims fall under *Monroe* or under *Parratt*. Whether substantive due process claims are to be analyzed under *Monroe* or under *Parratt* depends on whether substantive due process rights derive solely from the Fourteenth Amendment, or from other portions of the Constitution and federal laws. If substantive due process derives solely from the Fourteenth Amendment, then the only analysis required is that undertaken in *Parratt*: does the case involve only an isolated deprivation difficult to predict, and if so, does the state provide an adequate postdeprivation remedy?

From the landmark case on substantive due process, *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), it appears that substantive due process derives solely from the Fourteenth Amendment. *See Rochin* at 168–70, 72 S.Ct. at 207–08.

However, in the absence of guidance from the Supreme Court on the point, this court instead treats the substantive due process claim as deriving from other portions of the Constitution and Amendments as well as from the Fourteenth Amendment. (Obviously, if the analysis under *Parratt* also disposes of the substantive due process claim, then the analysis which follows under the heading of "Substantive Due Process," *see* text above at 504–506, is superfluous.) The court understands the omission of substantive due process analysis in *Parratt* to be explicable on other grounds. *See* text above at 504–505.

552–4, 550 n.8, 101 S.Ct. at 1921–3, 1920 n.8 (1981) (Powell, J., concurring in result). These seemingly deliberate omissions may mean that substantive due process requirements are satisfied when *Parratt* criteria are satisfied, but the court believes that the better approach here is to assume that substantive due process requires more than the satisfaction of the criteria set forth in *Parratt.*[4] In *Hall, supra,* the United States Court of Appeals for the Fourth Circuit, reviewed, after the *Ingraham* decision, a case involving allegations of severe corporal punishment by public school officials. In *Ingraham,* the Court found due process requirements with respect to corporal punishment of students by public school officials satisfied by state common-law and statutory postdeprivation remedies. While the Supreme Court rejected the students' Eighth Amendment claims on grounds that the Cruel and Unusual Punishments Clause applies only to criminal punishment, it did not consider whether claims had been stated for violations of substantive due process rights. The Fourth Circuit understood the failure of the Court to address substantive due process claims in *Ingraham* to have been an anomaly brought about by procedural considerations, i.e., the fact that the Court had not granted *certiorari* to consider the question of a substantive due process violation. *See Hall* at 611 n.4. The omission of substantive due process analysis from *Parratt,* decided since the Fourth Circuit decided *Hall,* does not necessarily weaken the appeals court's analysis of *Ingraham: Parratt* involved the alleged negligent loss of a prisoner's hobby kit, an event which by no stretch of the imagination can be considered to satisfy the substantive due process standard of "shocking to the conscience."

In *Hall,* the appeals court determined that the allegations of severe corporal punishment in the case under review stated a claim for deprivation of substantive due process rights to bodily integrity under section 1983:

In resolving a state tort claim, decision may well turn on whether "ten licks rather than five" were excessive, [citation omitted] so that line-drawing this refined be required. But substantive due process is concerned with violations of personal rights of privacy and bodily security of so different an order of magnitude that inquiry in a particular case simply need not start at the level of concern these distinctions imply. As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhuman abuse of official power literally shocking to the conscience. [Citation omitted.] Not every violation of state tort and criminal assault laws will be a violation of this constitutional right, but of course some may. *Hall* at 613.

■ The test to be applied in a substantive due process analysis, then, is whether the alleged conduct is "literally shocking to the conscience." Allegedly plaintiff suffered a knife wound from an unprovoked attack by Compton, behavior which might well be "shocking to the conscience" had it been directly visited on plaintiff by, say, a police officer. *See Jenkins v. Averett,* 424 F.2d 1228 (4th Cir. 1970). If it had been alleged that the State defendants employed Compton as a cat's-paw to inflict an injury on plaintiff, the court would have less hesitancy in concluding that plaintiff had stated a substantive due process claim meriting survival of a motion to dismiss under Fed.R. Civ.P. 12(b)(6). In the circumstances alleged here, the viability of plaintiff's claim is more doubtful.

■ In any event, the particular allegations in this case are insufficient to maintain a claim under section 1983, for reasons similar to those put forward in *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). In *Martinez* the Su-

**4.** *See* footnote 3.

preme Court decided that appellants, whose decedent was tortured and killed by a parolee five months after his release, had stated no claim under 42 U.S.C. § 1983. The parolee, a mentally disordered sex offender, was given a jail sentence of from one to twenty years with a recommendation that no parole be given. Nonetheless, the parole board approved his parole after five years of incarceration. The board also failed to observe formalities required on the occasion of such a release. In affirming the dismissal of the section 1983 action, the Court held that "under the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." *Id.* at 285, 100 S.Ct. at 559.

The attack in this case occurred five weeks after release. *Compare Homere v. State,* 48 App.Div.2d 422, 370 N.Y.S.2d 246 (1975) (assault by patient on afternoon of release) *with Martinez, supra.* Plaintiff has not alleged that Compton had singled plaintiff out of the general public as a person toward whom he was hostile, or that if Compton harbored such hostility towards plaintiff, the State defendants knew or had reason to know of it. *Compare Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976) (patient confided threat on a particular person, whom he later killed, to psychologist) *with Martinez, supra.* The allegations made here involve consequences too remote to hold the state defendants liable under the federal civil rights law.

Plaintiff does not allege that Compton himself was acting under color of state law when he attacked plaintiff. Hence plaintiff has no federal claim remaining against any of the defendants in this case. Because it disposes of the federal claims at this stage of the case, the court also dismisses plaintiff's state claims without prejudice. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**5.** The court expresses no opinion regarding the merits of plaintiff's case under state law. Applicable state law concepts of foreseeability, proximate causation, etc., may involve line-

Plaintiff is free to pursue his state claims in the appropriate state forum.[5]

drawing more refined than that required in a federal civil rights action. *See Hall* at 613 (quoted in text at 505).