**Zelma JONES, Plaintiff-Appellant,**

v..

**George M. PHYFER, et al.,
Defendants-Appellees.**

No. 84–7514.

United States Court of Appeals,
Eleventh Circuit.

May 28, 1985.

Rehearing and Rehearing En Banc
Denied July 12, 1985.

Ira De Ment, Montgomery, Ala., Alberta Murphy, Tuscaloosa, Ala., for plaintiff-appellant.

Joseph T. Carpenter, Montgomery, Ala., for Wayne Walker.

Robert Childers, Montgomery, Ala., William J. Samford, II, Legal Counsel, Alabama Dept. Youth Services, Mt. Meigs, Ala., for all defendants except James and Walker.

Dennis R. Bailey, Jeff H. Long, Montgomery, Ala., for James.

Before HENDERSON and HATCHETT, Circuit Judges, and ALLGOOD[*], District Judge.

ALLGOOD, District Judge:

Appellant Jones complains of the grant of appellees' motion to dismiss by the district court in favor of the appellees George M. Phyfer, et al. In the district court, Jones sought relief pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment. After reviewing the case and the applicable law, we have determined that the district court's opinion is correct and we affirm.

The defendants are the administrative, professional and service employees of the Department of Youth Services. Mt. Meigs Industrial School is an agency within the department, and defendants James, Turner, Chambers, Chalker and Gray are employees of the Department and work at Mt. Meigs as counselors.

Facts:

On December 26, 1981, Jones, an elderly woman, was raped in her home by a young man, who just six months before had been convicted and imprisoned for breaking and entering her home. At the time of the rape, the young man had just been released on a Christmas furlough from the Alabama Industrial School at Mt. Meigs, a facility operated by the Alabama Department of Youth Services. The young man had been released to the custody of his grandmother, whose residence was in close proximity to Jones'. At the time of the furlough, the young man had an extensive criminal and troubled psychiatric history.

Procedural:

Jones brought this lawsuit against defendant Alabama Department of Youth Services and numerous fictitious defendants, seeking damages and claiming that the defendants failed to warn her and protect her from injury in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. In response to a motion to dismiss, the court found that the Department of Youth Services was a state agency and entitled to eleventh amendment immunity, and the court dismissed the department. The court granted leave to Jones to substitute real and named defendants for fictitious ones. Jones filed an amended complaint, naming those defendants. The district court determined that Jones' amended complaint failed to state a cause of action, but gave her leave to amend her complaint to cure the defect. Following consideration of the amended complaint, the district court held that the plaintiff still had not established the required "special relationship" that would impose a constitutional duty on defendants and granted the motion to dismiss.

---

[*] Honorable Clarence W. Allgood, U.S. District Judge, Northern District of Alabama, sitting by designation.

Appellant raises two issues on appeal. First, appellant contends that a special relationship existed between herself and defendants so as to create a constitutional duty on the part of the defendants toward the plaintiff to protect her or warn her of defendant's release. Second, appellant contends that the reference to fictitious parties in her original complaint was sufficient to meet the provisions of Fed.R.Civ.P. 15(c) so that her amended complaint related back with regard to defendants Mitchell James, Beulah E. Turner, Aaron Chambers, F.C. Chalker and Fred Gray.

Assuming all the facts alleged in Jones' complaint are true, it "... should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Having analyzed the relevant case law, we are convinced that Jones' due process claim must fail because the facts alleged in the amended complaint do not give rise to a constitutional duty on the part of the defendants toward Jones.

 In *Bowers v. DeVito, M.D.,* 686 F.2d 616 (7th Cir.1982) the court stated that "there is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law ..." *Id.* at 618. In *Martinez, et al. v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the court stated that the Fourteenth Amendment protected the plaintiff from deprivation by the "State ... of life ... without due process of law." *Id.* at 284, 100 S.Ct. at 559. Brown was not a state officer and could not be said to be acting under color of state law. There is an initial requirement for a Section 1983 action "... that the plaintiff be deprived of a right 'secured by the constitution and the laws.' " *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Appellant states that she was deprived of her right to liberty as secured by the Constitu-

tion. Although the action by the Department of Youth Services' personnel in allowing Brown the Christmas furlough can be characterized as State action, Brown's action in harming appellant after his release cannot be so characterized. As was stated in *Bowers, supra,* "there is no constitutional right to be protected by the state against being murdered by criminals or madmen." *Id.* at 618.

In the case of *Wright v. City of Ozark,* 715 F.2d 1513 (11th Cir.1983), the court stated the requirements for establishing a constitutional duty on the state to protect a member of the public from criminal acts of a third person. In that case, a woman, who was raped in an area where recent prior rapes had occurred, brought an action against the city and certain city officials alleging that they had deliberately suppressed information of the prior rapes. The court held that "... the due process clause of the Constitution does not protect a member of the public at large from the criminal acts of a third person, even if the state was remiss in allowing the third person to be in a position in which he might cause harm to a member of the public, at least in the absence of a special relationship between the victim and the criminal or between the victim and the state." *Id.* at 1515.

In *Martinez, supra,* a 15-year-old girl was murdered by a parolee five months after he was released from prison. Appellants brought a Section 1983 action, claiming that the parolee's actions subjected decedent to a deprivation of her life without due process of law. In that case, the Supreme Court required a showing that the decedent, as distinguished from the public at large, faced a special danger. Further, the court held that appellant's death was too remote a consequence of the parole officers' action. *Id.* 444 U.S. at 285, 100 S.Ct. at 559.

 As established in the *Martinez* case and also the *Wright* case, *supra,* what is required in a 42 U.S.C. § 1983 action is the establishment of a special relationship between the victim and the criminal or be-

tween the victim and the state, or some showing that the victim, as distinguished from the public at large, faced a special danger.

In the cases on this issue, the courts have held that, absent the special showing set forth in *Martinez*, the action must fail. In *Holmes v. Wampler, M.D.*, 546 F.Supp. 500 (E.D.Va.1982), the plaintiff was stabbed by a released inmate of the Virginia State Hospital, and brought a civil rights action against the hospital superintendent and physician for negligent release and failure to warn of probable dangerousness. The court cited *Martinez*, and stated that "[p]laintiff has not alleged that Compton had singled plaintiff out of the general public as a person toward whom he was hostile, or that if Compton harbored such hostility towards plaintiff, the state defendants knew or had reason to know of it." *Id.* at 506. The court further stated that the consequences were too remote to hold the state defendants liable under the federal civil rights law.

In *Humann v. Wilson*, 696 F.2d 783 (10th Cir.1983), the victim of a rape brought an action against corrections officials who transferred an inmate from jail to a Denver Community Corrections Facility. That facility allowed a great deal of freedom for the inmates and the victim was attacked within two months of the inmate's transfer. Again, the court cited *Martinez* and stated that the crime was too remote from state action to constitute a valid civil rights claim. The court further stated that the remoteness was not only in terms of time, but also in that the parolee was in no sense an agent of the state, and the fact that "the plaintiff's decedent did not stand in any special relationship to the parolee from which the parole officers might have inferred a special danger to her." *Id.* at 784.

In *Fox v. Custis*, 712 F.2d 84 (4th Cir. 1983), the criminal was convicted of arson and grand larceny in 1976, and Custis and Chandler of the Virginia Department of Corrections were assigned to supervise him when he was paroled. Within three weeks of his parole, on May 1, Mason defrauded an innkeeper, was convicted of the offense, and was given a 30-day suspended sentence. Custis and Chandler were aware that he had violated parole, and also were aware of his propensities for arson, sexual aberrations, and other criminal behavior. They also suspected that Mason had committed an act of arson on May 1 that resulted in a woman's death. Finally, on May 14, Mason set fire to Fox's home, raped, beat and set fire Lisa Morris, and shot and stabbed Wendy Morris. The court cited *Martinez* as requiring an awareness by defendants that the claimant, as distinguished from the public, faced a special danger. The court further adopted the Seventh Circuit decision in *Bowers, supra*, stating that there is not a constitutional right to be protected by the state against criminals and madmen and no duty by the state to provide the protection. The court further acknowledged that this right and duty might arise if a special custodial or some other special relationship is established.

There are cases which demonstrate the type of special relationship required for an action under 42 U.S.C. § 1983. In *Jensen v. Conrad*, 570 F.Supp. 114 (D.S.C.1983), the Department of Social Services received a report concerning the abuse of a child. After several unsuccessful attempts by a caseworker to locate the home, the case was officially closed. The three-year-old child was subsequently beaten to death by the mother's live-in boyfriend. The court distinguished *Martinez*, stating that "the protective service caseworkers in this case were allegedly aware that particular individuals (i.e., the children in the Clark family), 'as distinguished from the public at large,' faced special danger (i.e., physical abuse by their guardians)." *Id.* at 131. Further, the court stated that the caseworkers were hired specifically to protect the children and that it would therefore be unreasonable to characterize the child's death as too remote a consequence of the caseworkers' failure to perform their duties. Finally, the court cited *Fox v. Custis*, 712 F.2d 84, stating that "... although

the state has no constitutional duty to protect members of the general public from random criminal violence, a constitutional right to affirmative protection by the state may arise out of special relationships 'created or assumed by the state in respect to particular persons.'" *Id.* at 132. Further, the court stated that it is clear that this state has assumed a special protective relationship with respect to such children.

In the instant case appellant attempts to establish a special relationship between herself and Brown, based on the fact that she is the one who brought charges against Brown and was responsible for his conviction and confinement to Mt. Meigs. Because of this prior contact, she contends that it was clearly foreseeable that Brown would likely attempt to harm her. Appellant cites *Swanner v. United States*, 309 F.Supp. 1183 (M.D.Ala.1970), where the plaintiff was a "special employee" of the Internal Revenue Service and had collaborated with the government. The court said that it was reasonable to expect that he and his family were endangered as a result. Therefore, the court said the United States had a special duty to use reasonable care to protect them. The plaintiff in that case was clearly distinguishable from the public at large in that the Internal Revenue Service was aware of the danger of plaintiff's undercover work and of particular threats that had been made.

Plaintiff further cites *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632, where prison officials were held liable for the death of an inmate at the hands of other prisoners. The District Judge in that case instructed the jury, under the principle of qualified immunity, "... that Smith could not be held liable at all unless he was guilty of 'a callous indifference or a thoughtless disregard for the consequences of [his] act or failure to act,' or of 'a flagrant or remarkably bad failure to protect' Wade." *Id.* at 51, 103 S.Ct. at 1637.

Another case where state employees were held liable for injury to an individual is the case of *Spence v. Staras*, 507 F.2d 554 (7th Cir.1974). In that case, an inmate

had been beaten at least twenty times by fellow inmates and was finally beaten to death. Plaintiff sued eight agents and employees of the Peoria State Hospital. The Court of Appeals reversed the District Court's grant of a motion to dismiss, stating that "the defendants knew that the decedent was the target of assaults by fellow inmates, knew that he had been beaten on at least twenty prior occasions, and knew that he was nonverbal and unable to call for help or defend himself when attacked." *Id.* at 557.

■ As was stated in *Fox v. Custis, supra*, there is no constitutional duty to protect members of the general public from random criminal violence unless a special relationship exists which imposes such a duty. This type of special relationship requires more than what is established in the instant case. In *Bowers v. DeVito, supra*, the criminal was convicted of aggravated battery with a knife and was diagnosed as a "schizophrenic in remission." One year later, he killed a woman with a knife and at trial was found not guilty by reason of insanity. He was released after five years and one year after his release he killed someone else. The court in that case stated that the parole board was not liable under Section 1983 for damages caused when they released someone unless they knew the one harmed faced a special danger from the parolee. That case further states that "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit. It is on this theory that state prison personnel are sometimes held liable under Section 1983 for the violence of one prison inmate against another." *Id.* at 618.

■ It is not enough that Brown had broken into plaintiff's house and stolen money on a prior occasion, or that she was instrumental in having Brown convicted and sent to Mt. Meigs for a period of detention. These two things alone are not sufficient to establish the required special

relationship that would impose a duty on the state to protect plaintiff or to warn her of Brown's release.

Plaintiff further attempts to show a special relationship between defendants and Brown based on defendants' duties under state law, Ala.Code § 44–1–32. That section states that the Department of Youth Services may, "... after an objective consideration of all the available information ... arrange temporary return or trial visit of the youth to his own home, as often as conditions appear desirable ..." The plaintiff contends that this imposes a duty on defendants owed to Brown and to the public. However, in *Martinez*, the court stated that "[r]egardless of whether, as a matter of state tort law, the parole board could be said either to have had a 'duty' to avoid harm to his victim or to have proximately caused her death, ... we hold that, taking these particular allegations as true, appellees did not 'deprive' appellant's decedent of life within the meaning of the Fourteenth Amendment." *Id.* 444 U.S. at 285, 100 S.Ct. at 559. The fact that defendants may have violated the duties set out by state law for employees of the Department of Youth Services, does not mean that the defendants deprived plaintiff of her liberty rights without due process of law. In *Jensen v. Conrad*, 570 F.Supp. 114 (D.S.C. 1983), the court stated that "a Section 1983 claim may not be based simply on the allegation that governmental officials violated state law in failing to take appropriate protective measures." *Id.* at 121. The fact that plaintiff here may have a state tort action against defendants for violation of duties based on state law, does not automatically warrant a cause of action under Section 1983.

Plaintiff has not established the required special relationship, based on the interactions of the victim, Brown and the Department of Youth Services, to invoke the due process protection of the Fourteenth Amendment. Further, such relationship is not established by the defendants' duties as imposed by Ala.Code § 44–1–32.

The second issue raised by appellant on appeal is whether reference to fictitious parties in her original complaint was sufficient to meet the provisions of Fed.R.Civ.P. 15(c) so that her amended complaint related back with regard to certain of the defendants. Having found in favor of the appellees on the first issue, it is unnecessary to reach a decision as to the second issue.

AFFIRMED.