United States Court of Appeals,

Eleventh Circuit.

No. 94-8580.

Terrie Lynn LOVINS, Plaintiff-Appellant,

v.

Earl D. LEE, Individually and in his official capacity as the
former Sheriff of Douglas County, Ronald H. Shadix, Individually
and in his official capacity as the former Chief Deputy Sheriff of
Douglas County, Douglas County, J.R. Allen, Individually and in his
official capacity as Deputy Sheriff of Douglas County, Michelle
Huey, Individually and in her official capacity as Deputy Sheriff
of Douglas County, Defendants-Appellees.

June 6, 1995.

Appeal from the United States District Court for the Northern
District of Georgia. (No. 1:93-CV-659-RHH), Robert H. Hall, Judge.

Before CARNES and BARKETT, Circuit Judges, and GIBSON[*], Senior
Circuit Judge.

CARNES, Circuit Judge:

In this tragic case a young woman was kidnapped and brutally
raped by a violent criminal who had been temporarily released from
custody while serving a jail sentence. The issue presented is
whether the victim has a substantive due process right to recover
from those responsible for the criminal's release, which is alleged
to have been contrary to state law. Binding precedent requires us
to hold that there is no general substantive due process right to
be protected against the release of criminals from confinement,
even if that release violates state law.

I.

In July of 1991, Danny Leonard Ray was serving a sentence in

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for
the Eighth Circuit, sitting by designation.

the Douglas County, Georgia jail for a "Peeping Tom" offense and for criminal trespass. At the time he committed and was convicted for those crimes, Ray was on probation, and he had been convicted previously for the crimes of theft, robbery, kidnapping, and rape. Notwithstanding his history of violent crimes, Ray was made a "trusty" at the Douglas County jail, and he was given a number of weekend passes out of custody which he took advantage of, apparently without incident. Then, on July 1, 1991, Ray was released on a week-long "emergency" pass he had obtained by telling a deputy a number of lies.

The first day of his release on that emergency pass, Ray abducted the plaintiff from the front of a grocery store, drove her to a deserted area, raped and sodomized her, and left her tied up in the woods. After being apprehended and convicted of kidnapping, rape, aggravated sodomy, and armed robbery for those actions, Ray was sentenced to life imprisonment plus twenty years.

Plaintiff filed this 42 U.S.C. § 1983 action against Douglas County, Georgia, and various individuals, including the county's former sheriff and former chief deputy sheriff, claiming that they violated her substantive due process rights by releasing Ray, a dangerous criminal, before he was entitled to be released. The district court granted summary judgment for all of the defendants, and plaintiff appeals.

The parties disagree about whether the defendant's actions in placing Ray in the trusty program and releasing him on an emergency pass was contrary to Georgia law. The district court noted that, "[p]laintiff has alleged facts which suggest that Ray was not

eligible to participate in the trusty program and that defendants were wrong to have given him any passes."  Apparently proceeding on the assumption that the defendants had violated Georgia law in releasing Ray, the district court nonetheless concluded that defendants' actions did not violate plaintiff's substantive due process rights.  For purposes of this appeal, we, too, will assume that Ray was ineligible for the trusty program and that defendants violated Georgia law by placing him in that program and by releasing him on the emergency pass.

## II.

The Supreme Court has tightly restricted the authority of federal courts in the substantive due process area.  The Court has unanimously noted its reluctance to expand the concept of substantive due process, because "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field."  *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (citation omitted).

The Supreme Court has been particularly unreceptive to the central premise of plaintiff's position, which is that citizens of this country have a substantive due process right to be protected by government from the lawless among us.  Faced with a similar contention in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989), the Court held that "nothing in the language of the Due

Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." Nor did the Court find anything in the history of the Clause to support placing such an obligation upon government. Instead, it concluded that the provision's "purpose was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes." *Id.* at 196, 109 S.Ct. at 1003.

Attempting to escape the clear language of *DeShaney*, plaintiff argues that this case fits within the "special relationship" exception to the general rule that the Due Process Clause does not entitle a citizen to be protected from violence at the hands of non-governmental actors. Unfortunately for plaintiff, that exception is limited to circumstances in which there is a special relationship between the government and the victim of violence or mistreatment, a circumstance that is lacking in the present case. Examples of special relationship cases include those involving incarcerated prisoners and involuntarily committed mental patients. *DeShaney*, 489 U.S. at 198-99, 109 S.Ct. at 1004-05. A long line of decisions have held that government has some responsibility to assure, to the extent reasonably possible, the safety of such persons. The Supreme Court has explained that those special relationship decisions "stand only for the proposition that when the State takes a person into its custody and holds him there

against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  *Id.* at 199-200, 109 S.Ct. at 1005.  The duty in such cases arises from the limitations which the government has imposed on the freedom of the individual to act on his own behalf.  *Id.* at 200, 109 S.Ct. at 1005-06.  In this case, by contrast, Douglas County had not imposed upon the plaintiff any restrictions to act on her own behalf.  There was no special relationship between her and the county;  she was in all respects a member of the general citizenry.

In a further attempt to escape the effect of *DeShaney*, plaintiff points to footnote 2 of that opinion.  There, *id.* at 195 n. 2, 109 S.Ct. at 1003 n. 2, the Supreme Court declined to address the issue of whether the State's child protection statutes gave the plaintiff child in that case an entitlement to receive protective services in accordance with the statute, an entitlement which might enjoy due process protection against deprivation under *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  Plaintiff argues that Georgia statutes restricting the release of convicted criminals such as Ray gave her an entitlement under state law which was protected under the Due Process Clause, and that the defendants deprived her of that entitlement when they released Ray in violation of those statutes. This argument is foreclosed by at least two decisions, one of which is *Jones v. Phyfer,* 761 F.2d 642 (11th Cir.1985).  In that case, an elderly woman was raped in her home by a delinquent, who six months earlier had been convicted and imprisoned at a state industrial

school for breaking and entering into that very woman's home. At the time of the rape, the delinquent had just been released on a Christmas furlough, notwithstanding the fact that he had "an extensive criminal and troubled psychiatric history." *Id.* at 643. The plaintiff contended that the release violated state law, but this Court held: "The fact that defendants may have violated the duties set out by state law for employees of the Department of Youth Services does not mean that the defendants deprived plaintiff of her liberty rights without due process of law." *Id.* at 647. The victim plaintiff in *Jones* may have had a state tort action against the defendants for violation of their duties under state law, but that was held to be insufficient to give her a valid constitutional claim. *Id.*

Plaintiff's argument that the violation of state law by the defendants gives her a viable substantive due process claim is also foreclosed by the Supreme Court's decision in *Collins,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261. That case involved an action by the widow of a city sanitation department employee who died of asphyxia after entering a manhole to unstop a sewer line. The widow sued the city and various municipal officials claiming that their failure to train or warn city employees, including her husband, about known hazards in the workplace violated her husband's substantive due process rights. *Id.* at 116-20, 112 S.Ct. at 1064-65. She contended that her substantive due process claim was supported by the Texas Hazard Communication Act. *Id.* at 129, 112 S.Ct. at 1070. The Supreme Court assumed that that state statute imposed a duty on the city to warn its sanitation employees

about the dangers of noxious gases in the sewers and a duty to provide safety training and protective equipment to minimize those dangers; the Court further assumed that the statute created an entitlement that qualifies as a liberty interest protected by the Due Process Clause. Even with those assumptions, however, the Supreme Court held that the defendants' violation of that state statute did not give rise to a viable substantive due process claim. *Id.* at 127-30, 112 S.Ct. at 1070-71.

The plaintiff relies upon *Cornelius v. Town of Highland Lake, Alabama,* 880 F.2d 348 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990), but there is considerable doubt about whether that decision survives the Supreme Court's subsequent *Collins* decision. Two panels of this Court have expressed some doubt about the continuing viability of the *Cornelius* decision. *See Wooten v. Campbell,* 49 F.3d 696, 700 n. 4 (11th Cir.1995) ("There is some question whether this Court's holding in *Cornelius* survived the Supreme Court's decision in *Collins*...."); *Wright v. Lovin,* 32 F.3d 538, 541 n. 1 (11th Cir.1994) ("We note that there is some doubt whether our holding in *Cornelius* has survived the Supreme Court's recent holding in *Collins*...."). Even assuming, however, that *Cornelius* is still good law, it is distinguishable from the case at hand. The *Cornelius* plaintiff was a female employee of city hall who, in order to keep her job, had to work around work squad inmates. It was that employment situation, the *Cornelius* court reasoned, which created a special relationship between the city and the plaintiff. 880 F.2d at 355. Moreover, some of the governmental defendants in

*Cornelius* had furnished the work squad inmates with tools which were dangerous weapons. *Id.* at 358. By contrast, in this case there was no special relationship, employment or otherwise, between the plaintiff and the defendants, nor did the defendants furnish dangerous weapons to the criminal who victimized the plaintiff.

Plaintiff also relies upon *Taylor v. Ledbetter,* 818 F.2d 791 (11th Cir.1987) (en banc), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989), which is readily distinguishable, because it is a special relationship case. The child victim in *Taylor* had been involuntarily removed from the custody of her parents and placed in a foster home where she suffered permanent injuries as a result of severe beatings. *Id.* at 792. The Court explained that, "a child involuntarily placed in a foster home is in a situation so analogous to a prisoner in a penal institution and a child confined in a mental health facility that the foster child may bring a section 1983 action for violation of fourteenth amendment rights." *Id.* at 797 (footnote omitted). Plaintiff's reliance upon *Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277 (6th Cir.1987), also does her little good. *Nishiyama* preceded *DeShaney* and *Collins,* and it was thus unguided by those decisions. Moreover, *Nishiyama* is distinguishable, because the inmate perpetrator in that case was not only released from custody but was also given a sheriff' department patrol car with blue lights, which he used to pull over the victim's car before he beat the victim to death. 814 F.2d at 279. In this case by contrast, none of the defendants provided the criminal with the instrumentalities which he used to commit the crime.

The closing paragraph of the Supreme Court's *DeShaney* opinion says much about the current state of substantive due process law:

> The people of Wisconsin may well prefer a system of liability which would place upon the State and its officials the responsibility for failure to act in situations such as the present one. They may create such a system, if they do not have it already, by changing the tort law of the State in accordance with the regular lawmaking process. But they should not have it thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment.

*Id.* 489 U.S. at 203, 109 S.Ct. at 1007. In this case, the district court dismissed plaintiff's state law claims without prejudice, thus sending her to the state courts to seek a remedy for the egregious injury she has suffered. Whether or not the people of Georgia have decided to provide such a remedy, that is where the Supreme Court has said that cases like this one belong.

## III.

The judgment of the district court is AFFIRMED.