**Wanda & Phillip NORRIS,**
**etc., et al., Plaintiffs,**

v.

**CITY OF MONTGOMERY, ALABAMA;**
**et al., Defendants.**

No. Civ.A. 98–T–588–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 19, 1998.

Ted G. Meadows, W. Kirk Davenport, Davenport & Willingham, Birmingham, AL, for Plaintiffs.

Robert Coleman Black, Jr., Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, F. Tim McCollum, City Attorney, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

Plaintiffs Wanda and Phillip Norris (on behalf of their deceased son Phillip Heath Norris), Tammie Mosley (on behalf of her minor child Ashley Dantzler), Bo and Minnie Coon (on behalf of their minor child Lee Coon), James Shaw (on behalf of his minor child Jason Shaw), and Bo Coon bring this lawsuit alleging a claim under the due-process clause of the fourteenth amendment to the United States Constitution, as enforced through 42 U.S.C.A. § 1983, against defendants City of Montgomery, Alabama, Mayor Emory Folmar, Police Chief John Wilson, and Police Officer Thomas Perkins. The plaintiffs also assert state-law claims against these defendants and a private citizen, defendant Michael Perkins.[1] This lawsuit arises out of a fatal collision between a car driven by Michael Perkins and a second vehicle driven by Lee Coon and occupied by the other minor plaintiffs. In their § 1983 claim, the plaintiffs allege that the city and its officials violated their substantive-due-process rights when Officer Perkins failed to impound the vehicle driven by Michael Perkins once Officer Perkins learned that Michael Perkins was driving without a license. The plaintiffs have invoked the court's jurisdiction as to the federal claim pursuant to 28 U.S.C.A. §§ 1331, 1343, and as to the state-law claims pursuant to 28 U.S.C.A. § 1367.

The case is now before the court on a motion to dismiss filed by the city, its officials, and Officer Perkins on June 19, 1998. For the reasons that follow, the court will grant the motion as to the plaintiffs' § 1983 claim. Because this decision will dispose of

the plaintiffs' federal claims and thereby eliminate the basis for the court's supplemental jurisdiction over the state-law claims, the court also will dismiss the plaintiffs' state-law claims against these defendants as well as against defendant Michael Perkins, albeit without prejudice to the pursuit of these claims in state court.

## I. LEGAL STANDARD FOR MOTION TO DISMISS

In considering a defendant's motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, the court accepts the plaintiffs' factual allegations as true, *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir.1994); *Andreu v. Sapp*, 919 F.2d 637, 639 (11th Cir.1990), and construes the complaint liberally in the plaintiffs' favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The action may not be dismissed unless "it appears to a certainty," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), that the plaintiffs can offer no set of facts supporting the relief requested. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993).

## II. BACKGROUND

The pertinent facts of this lawsuit, as alleged by the plaintiffs, are as follows. On August 1, 1997, at about 4:18 p.m., in Montgomery, Alabama, Officer Perkins stopped Michael Perkins, who was driving a 1976 Pontiac automobile, and issued two tickets, one for "excessive smoke" and another for "driving without first obtaining a driver's license." The latter constituted a violation of Montgomery Municipal Ordinance § 25-67.[2]

---

1. Michael Perkins, the driver of the automobile that struck the plaintiffs' vehicle, shares a last name (but no familial relationship) with one of the defendants in the suit, police officer Thomas Perkins, who stopped and ticketed Michael Perkins several hours before the fatal accident but

did not impound his vehicle. For the sake of clarity, the court will refer in this order to Michael Perkins by using his full name, and will refer to Thomas Perkins as "Officer Perkins."

2. Section 25-67 provides: "It shall be unlawful for any person to drive a motor vehicle within

At the time of the stop, Michael Perkins's driver's license had been revoked as a result of a previous conviction for driving while under the influence of alcohol. There is no allegation that, at the time of the stop, Michael Perkins was under the influence of alcohol or that Officer Perkins had any reason to believe that Michael Perkins was intoxicated.

Pursuant to § 32–5A–203(c)(1) of the Alabama Safe Streets Act of 1995, 1975 Ala. Code §§ 32–5A–200 through –205 (repealed 1998), a law enforcement officer is to impound a vehicle, regardless of ownership, where a driver is unable to produce a valid driver's license on demand. Officer Perkins did not impound Michael Perkins's vehicle when he learned that Michael Perkins was driving without a valid license. By doing so, the plaintiffs allege, Officer Perkins acted in accordance with the policy of the City of Montgomery to return vehicles to drivers who are unable to produce a valid driver's license after being stopped by law enforcement officers.

Later that same day, at approximately 9:55 p.m., Michael Perkins was driving the 1976 Pontiac when he collided with a vehicle driven by Lee Coon and owned by Bo Coon, killing Phillip Heath Norris, injuring Lee Coon, Ashley Dantzler, and Jason Shaw, and destroying the vehicle. At the time of collision, Michael Perkins's blood alcohol level was measured at 0.189, indicating that he was legally drunk.[3]

## III. DISCUSSION

### A.

The defendants raise several grounds for dismissal of the plaintiffs' federal claim, including the defense of qualified immunity. The United States Supreme Court recently emphasized that in an action under § 1983 in which the defense of qualified immunity is raised, the preferred approach is "to identify the exact contours of the underlying right said to have been violated" before addressing qualified immunity. *Sacramento v. Lewis*, 523 U.S. 833, ——, n. 5, 118 S.Ct. 1708, 1714

n. 5, 140 L.Ed.2d 1043 (1998). *But see Santamorena v. Georgia Military College*, 147 F.3d 1337 (11th Cir.1998) (holding that *Lewis* does not absolutely prohibit court presented with § 1983 claim from analyzing qualified-immunity question first). The court will follow the procedure recommended by the Supreme Court and proceed to determine what, if any, right of the plaintiffs has been violated. Because this analysis will dispose of the plaintiffs' federal claim, the court will not address the qualified-immunity issue.

The plaintiffs bring their federal civil-rights claim against the City of Montgomery, its officials, and Officer Perkins under the Civil Rights Act of 1871, 42 U.S.C.A. § 1983, which provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. As the basis of their § 1983 claim, the plaintiffs invoke the due-process clause of the fourteenth amendment, which provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const.Amend. XIV, § 1. The United States Supreme Court has interpreted this clause to comprise two distinct types of constitutional protection: procedural due process and substantive due process. *See McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir.1994) (en banc) (citing *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)). Here, the plaintiffs invoke only substantive due process, which "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)).

■ As the Supreme Court has recently reiterated, "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *Lewis*, 523 U.S. at ——, 118 S.Ct. at 1716. The precise criteria to be employed in determining whether an

---

the city without first conforming to the state driver's license laws."

3. The 1975 Code of Alabama § 32–5A–191(a)(1) prohibits driving while a person has "0.08 percent or more by weight of alcohol in his or her blood."

act of government is "fatally arbitrary" in the substantive-due-process context depends upon whether the challenged act occurred within the legislative or executive spheres. *Id.* Where, as here, executive action is at issue, "the cognizable level of executive abuse of power [is] that which shocks the conscience." *Id.* at 1717.

The plaintiffs appear to base their substantive-due-process claim on two independent theories. The first theory is grounded on Officer Perkins's alleged failure to comply with Alabama statutory law that required that he impound Michael Perkins's vehicle upon determining that Michael Perkins was driving without a license. Although not articulated, the plaintiffs seem to make the following two arguments based upon this alleged violation of the law. First, the plaintiffs appear to argue that Officer Perkins's alleged noncompliance with state law necessarily rendered the resulting harm to the plaintiffs a violation of the plaintiffs' substantive-due-process rights. Second, the plaintiffs seem to argue that the Alabama Safe Streets Act created a right, protected by the due-process clause, and that by failing to protect that right, the defendants violated the plaintiffs' substantive-due-process rights. The plaintiffs' second theory claims that the defendants created a "special danger" by failing to impound Michael Perkins's car and thereby violated the plaintiffs' substantive-due-process rights.

■ *Violation-of-state-law theory:* Although plaintiffs' pleadings do not make clear the contours of their theory, the court reads their complaint as making the following arguments. First, the plaintiffs seem to contend that noncompliance with state law by a governmental actor automatically renders any harm suffered as a result of that noncompliance a violation of substantive due process. Second, the plaintiffs apparently argue that the Alabama Safe Streets Act gave them a right, protected by the due-process clause, to be protected from unlicensed drivers, and that, by failing to impound Michael Perkins's car, the defendants violated that right. No matter how construed, the plaintiffs' theory fails.

■ The violation of a state law by a governmental actor does not necessarily con-

vert subsequent resulting harm into a due-process violation. As explained by the Eleventh Circuit Court of Appeals in *McKinney v. Pate,* "areas in which substantive rights are created only by state law ... are not subject to substantive-due-process protection under the Due Process Clause because 'substantive-due-process rights are created only by the Constitution.'" 20 F.3d at 1556 (quoting *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)). In other words, unless the governmental actor's violation of a state statute corresponds with the infringement of a right derived from the United States Constitution, the plaintiffs cannot establish a substantive-due-process claim.

■ The plaintiffs' argument that the Alabama Safe Streets Act of 1995 created an entitlement which was protected under the due process clause is also erroneous. The same argument was clearly rejected by the Eleventh Circuit in *Lovins v. Lee,* 53 F.3d 1208, 1210 (11th Cir.1995). *Lovins* involved a suit by a crime victim against the sheriff's department, which had permitted the release of her attacker on a temporary pass in violation of state law. The plaintiff argued that the state statutes restricting the release of convicted criminals such as her attacker gave her an entitlement under state law that was protected by the due-process clause, and that the defendants deprived her of that entitlement when they released her attacker in violation of those statutes. The court rejected the argument, finding it foreclosed by the decisions of the Eleventh Circuit in *Jones v. Phyfer,* 761 F.2d 642 (11th Cir.1985), and the United States Supreme Court in *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

In *Jones,* a woman was raped in her home by a individual who was allegedly illegally released from state custody. The court held that "[t]he fact that defendants may have violated the duties set out by state law for employees of the Department of Youth Services does not mean that the defendants deprived plaintiff of her liberty rights without due process of law." 761 F.2d at 647. The court noted that the plaintiff in *Jones* may have had a state tort action against the de-

fendants for violation of their duties under state law but held the state-law violation insufficient to give her a valid constitutional claim. *Id.*

The *Lovins* court also found that the plaintiffs' argument was foreclosed by the Supreme Court's decision in *Collins*. In that case, the widow of a city sanitation department employee who died of asphyxia after entering a manhole to unstop a sewer line sued the city and various municipal officials claiming that their failure to train or warn city employees, including her husband, about known hazards in the workplace violated her husband's substantive-due-process rights. 503 U.S. at 116–20, 112 S.Ct. at 1064–65. She grounded her substantive-due-process claim on a state statute requiring that certain employees receive warnings about job hazards. *Id.* at 129, 112 S.Ct. at 1070. The Court assumed that the state statute had imposed a duty on the city to warn its employees about the dangers posed by noxious gases and to provide safety training and protective equipment to minimize those dangers. The Court further assumed that the statute created an entitlement that qualifies as a liberty interest protected by the due process clause. Even with those assumptions, however, the Supreme Court held that the defendants' violation of that state statute did not give rise to a viable substantive-due-process claim. *Id.* at 127–30, 112 S.Ct. at 1070–71. *Collins* and *Jones* foreclose the argument that the defendants' alleged violation of the Alabama Safe Streets renders their actions a violation of substantive due process.

■ *Special-danger theory:* The plaintiffs' second theory is that the defendants violated their substantive-due-process rights by placing the plaintiffs in "greatly enhanced or special danger." [4] Specifically, they assert that Officer Perkins's failure to impound Michael Perkins's automobile, the City's failure to train police officers to impound the vehicles of unlicensed drivers, and the City's policy of not impounding vehicles driven by unlicensed drivers caused the plaintiffs' injuries. By "returning" Michael Perkins's car to him, the plaintiffs argue, the defendants affirmatively created a special danger to the plaintiffs and all other people in the general vicinity of the traffic stop. Thus, the plaintiffs contend, the defendants' actions constitute a constitutional violation and render the defendants liable under § 1983 for the plaintiffs' injuries, despite the fact that a third party, Michael Perkins, actually inflicted those injuries. For reasons the court will now explain, these allegations do not state a viable substantive-due-process claim.

■ "As a general matter, ... a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *De-Shaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). As the Supreme Court explained in *DeShaney,* "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* Because the due-process clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security, ... the Due Process Clause does not require the State to provide its citizens with particular protective services." *Id.* Therefore, "the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide [protective services]." *Id.*

■ While acknowledging the general rule that the State's failure to protect an individual from harm inflicted by third parties does not constitute a violation of due process, the plaintiffs contend that their case falls within an exception to the rule. One major exception to this rule is where a custodial relationship between the State and the victim renders the victim unable to protect himself. *Id.* at 199–200, 109 S.Ct. at 1005. *See also Lovins,* 53 F.3d at 1210. Another is when the State has created a danger or placed an individual in a position of "special danger." The plaintiffs attempt to invoke the latter exception.

**4.** *See* Plaintiffs' Supplemental Response to Defendants' Motion to Dismiss, filed July 17, 1998, at 5.

■ In order for the plaintiffs to hold the State liable under the special-danger analysis, they must show that the defendants affirmatively placed them in a position of danger that was distinguishable from that of the general public. *Mitchell v. Duval County School Bd.,* 107 F.3d 837, 839 (11th Cir.1997) (per curiam). Put another way, the state actors " 'must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.' " *Id.* (quoting *Johnson v. Dallas Indep., Sch. Dist.,* 38 F.3d 198, 201 (5th Cir.1994), *cert. denied,* 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995)). In determining whether this standard is satisfied, "courts look both at state actions increasing danger and to the related factor of whether a custodial relationship exists between the state and the perpetrator of the crime." *Id.*

Accepting the plaintiffs' allegations as true and construing them in the light most favorable to the plaintiffs, the court still finds that they have failed to present facts sufficient to give rise to liability under the special-danger theory. The plaintiffs claim that Officer Perkins affirmatively endangered the plaintiffs by "giving" Michael Perkins's car back to him. Regardless of whether one construes Officer Perkins's behavior as an affirmative act or an omission, however, the defendants' actions do not satisfy the special-danger standard, because their actions did not *increase* the danger posed by Michael Perkins to the plaintiffs. Had the defendants given Michael Perkins the alcoholic beverages that caused his intoxication, the defendants arguably would have increased the danger Michael Perkins posed to the plaintiffs. However, Officer Perkins merely failed to impound Michael Perkins's car. By so doing, Officer Perkins did not alter the danger posed by Michael Perkins to other drivers on the roads. The danger posed by Michael Perkins remained the same as if Officer Perkins had never stopped him. And, as mentioned earlier, the defendants were under no constitutional duty to stop Michael Perkins, or any other intoxicated driver, at all.

■ Furthermore, there was no custodial relationship between the defendants and Michael Perkins. Michael Perkins was not an inmate of an institution, and Officer Perkins did not arrest him. While a traffic stop does involve a restriction on the individual's freedom of movement, a person stopped for a traffic violation is not in custody. *Cf. Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (holding that a traffic stop is not "custody" for *Miranda* purposes because traffic stops are normally brief and curtail motorists' freedom of movement to a lesser degree than formal arrest).

The plaintiffs cite *Reed v. Gardner,* 986 F.2d 1122 (7th Cir.1993), in support of their argument that the defendants are liable under a special-danger theory. *Reed* involved a § 1983 suit by individuals injured in a car accident with an intoxicated driver. The court held that police violated the plaintiffs' due-process rights when they arrested the sober driver of a car and left a passenger who was obviously intoxicated in the automobile with the keys, knowing that he was likely to drive. In this case, in contrast, the police did not remove a safe driver and replace him with a dangerous driver, thereby creating a danger where none had existed before. At worst, Officer Perkins simply allowed a potentially dangerous driver to retain access to his automobile. Furthermore, as noted above, it is not alleged that Michael Perkins was intoxicated or that Officer Perkins had reason to believe he was intoxicated when Officer Perkins stopped him. Thus *Reed* is distinguishable from the case at hand.

The plaintiffs' reliance on *Nishiyama v. Dickson County, Tenn.,* 814 F.2d 277 (6th Cir.1987) (en banc), is also misplaced. In *Nishiyama,* police officers entrusted a fully functional police car to a prisoner known to have committed violent acts. The prisoner used the police car to detain motorists, one of whom he murdered. Unlike the defendants in *Nishiyama,* the defendants here did not create a dangerous situation by providing Michael Perkins with the instrumentality that he used to inflict harm on the plaintiffs.

Because the court finds that the failure to impound Michael Perkins's vehicle does not render Officer Perkins liable for the plaintiffs' injuries, the court necessarily cannot find the institutional defendants liable for a policy of not impounding vehicles driven by

unlicensed drivers and or for failure to train police officers to impound such vehicles. Thus the court will not address issues raised by these claims. In addition, because the court finds that the defendants cannot be held liable for the plaintiffs' injuries, it is unnecessary for the court to address whether the defendants' actions meet the "shocks-the-conscience" standard necessary to establish a violation of due process.

### B.

Because the plaintiffs' federal claims are due to be dismissed, the court declines to exercise supplemental jurisdiction as to their state-law claims, and thus the motion to dismiss filed by defendants City of Montgomery, its officials, and Officer Perkins will be granted as to these claims as well, albeit without prejudice to the pursuit of these claims in state court. 28 U.S.C.A. § 1367(c)(3). *See L.S.T., Inc. v. Crow,* 49 F.3d 679, 685 (11th Cir.1995) (per curiam). The same will also hold true for the state-law claims against Michael Perkins.

### IV. CONCLUSION

To be sure, the events that gave rise to this litigation are truly tragic, and they engender a deep sympathy, and even desire to do something, anything, to help. Nevertheless, this court is bound by the rule of law, as are all American courts. Therefore, having concluded that the plaintiffs have not stated a viable substantive-due-process claim, the court must dismiss this lawsuit.

An appropriate judgment will be entered.

### *JUDGMENT*

In accordance with the memorandum opinion entered on this date, it is the ORDER, JUDGMENT, AND DECREE of the court:

(1) That the motion to dismiss filed by defendants City of Montgomery, Alabama, Emory Folmar, John Wilson, and Thomas Perkins on June 19, 1998, is granted;

(2) That the federal claim against defendants City of Montgomery, Folmar, Wilson, and Thomas Perkins is dismissed with prejudice; and

(3) That the state-law claims against defendants City of Montgomery, Folmar, Wil-

son, and Thomas Perkins are dismissed without prejudice to being refiled in state court.

It is ORDERED that the state-law claims against defendant Michael Perkins are dismissed without prejudice to being refiled in state court.

It is further ORDERED that costs are taxed against the plaintiffs Wanda and Phillip Norris, Bo and Minnie Coon, Tammie Mosley, and James Shaw, for which execution may issue.